LEMMON, Judge.
Mrs. Charmaigne A. Guidry has appealed from a judgment dismissing her suit against National American Life Insurance Company to recover the proceeds of a life insurance policy. The primary issue is whether National American properly refused her husband the privilege of converting into an individual policy the amount of life insurance in force under a group policy at the time he terminated his employment with Economy Motors, Inc.
On April 1, 1966 National American issued Policy No. G-171 to “International Auto Sales and Service, Incorporated and Associates.” International was a distributor of Volkswagen automobiles, and the Associates or Participating Units were 17 different Volkswagen dealerships, two of which were Durham Motors and Economy Motors, Inc.
Joseph P. Guidry, Jr., then an employee of Durham Motors, became insured under the group policy. On September 18, 1967 Guidry left Durham Motors and accepted a position as service manager at Economy Motors. He applied for coverage under the same group policy, and a new certificate was issued to him. The next month he paid the premium through his new employer. Several months later he became ill and received disability benefits under the policy as an employee on sick leave.
In April, 1968 Guidry, desiring to return to work but physically unable to perform the duties of service manager, took a position with Durham Motors as a salesman, beginning on April 29.
*925 On May 1, 1968 the group policy was terminated when another company took over the coverage. Later that month Guidry requested conversion of the National American policy which had been in effect at the time of the termination of his employment with Economy Motors. National American disapproved Guidry’s request by letter stating that:
“ * * * your termination of employment with Economy Motors and subsequent re-employment by Durham Motors constituted no change in coverage under the same master group contract.”
Guidry subsequently died of cancer, and his widow instituted this action.
The policy provision granting the privilege of conversion is Section 16 — Conversion Privilege, which provides in pertinent part:
“Any Person within thirty-one days after
“(a) the date his life insurance under this Policy is terminated because of termination of employment or of membership in a class or classes eligible for such insurance under this Policy
‡ ‡ %
“shall be entitled to have issued to him, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits provided written application therefor and payment of the first premium thereon is made to the Company within said thirty-one days.” (Emphasis supplied.)
National American concedes Guidry’s employment with Economy Motors terminated on April 28, 1968. However, the insurer takes the position that, under a fair interpretation of Section 16, the test of the right to conversion is not whether employment terminated on that date, but whether coverage terminated because of the admitted termination of employment.
The purpose of Section 16 is to restrictively grant the privilege of conversion under the terms and conditions outlined therein. An insured may convert within a specified time after certain listed events, one of which is the date insurance under the policy is terminated because of termination of employment.
To determine whether Guidry’s insurance terminated when he left Economy Motors, we refer not to Section 16 (which lists the conditions under which the conversion privilege can be exercised), but to Section 5 — Individual Terminations (which lists the conditions under which insurance coverage ceases). Section 5 provides:
“The insurance of any Person insured under this Policy shall cease on the earliest of the following dates:
“(a) the date of termination of this Policy ; or
“(b) the date ending the insurance month as of which he requests that his insurance be terminated, but in no event prior to the date of such request; or
“(c) the date ending the insurance month for which the last premium payment is made on account of his insurance; or
“(d) the date of termination of his membership in the class or classes eligible for insurance under the Policy; or
“(e) the date he enters the Armed Forces of any country; or
“(f) THE DAY NEXT FOLLOWING THE DAY THAT
termination of his employment occurs. * * * ” (Emphasis supplied.)
Since Guidry’s employment terminated on April 28, 1968, a literal interpretation of Section S would tend to the conclusion that his insurance under the policy terminated on the next following day. How *926 ever, National American contends that on the next day following Guidry’s termination of employment with Economy Motors, he was an active employee of another participating unit.
“Person” is defined in the policy as “any individual who is an active employee of a participating unit”. Since Guidry was an active employee of Economy Motors on April 28 and of Durham Motors April 29, National American argues that his employment at a participating unit at no time terminated and his relationship with the policyholder (International Auto and Associates) remained the same. Asserting that a “person” does not change his status as an employee within the intention of the policy when he terminates employment with one participating unit and immediately commences re-employment with another unit, the insurer essentially contends that there was continuous coverage under the policy in Guidry’s case. In support of this contention National American produced testimony that International Auto and its associates intended to keep the employees of all participating units insured under the master policy, even when an employee transferred between associated dealerships, in order to help prevent the loss of valuable employees to their competitors.
We reject this argument for several reasons. First, the policy specifically provides that the insurance of any person under the policy ceases upon the occurrence of certain listed conditions, one being termination of employment. There is no exception stipulated in the case of re-employment with another participating unit, nor is there any specific provision for continuous coverage in such an eventuality. We decline to find that these provisions were implied in the policy, especially when the result of such a finding would be to deny the insured a privilege specifically granted by the terms of the policy.
The issue in this case is whether the insured had the right to demand conversion under the specific provisions of the policy. In making that determination, we are not concerned primarily with the motivation of the policyholders to provide attractive fringe benefits to their employees by furnishing continuous coverage or continuous eligibility.
Second, even if a person who terminates his employment at one participating unit and is immediately re-employed at another becomes immediately eligible for insurance under the group policy (rather than having to wait three months as required of new employees), this is not determinative of the issue. Eligibility does not automatically provide coverage; an application must be made.[1]
If a person in this situation must apply for coverage, it logically follows that the previously existing coverage was terminated. This termination of coverage is the event which bring into fruition the right to conversion.
Finally, if National American’s interpretation of continuous coverage is reasonable, then there are two reasonable interpretations when employment at a participating unit is terminated: (1) coverage is terminated, whether or not the employee commences employment with another participating unit and again becomes covered under the same master policy, or (2) coverage is continued if the employee immediately commences employment with another participating unit. When more than one reasonable interpretation of an insurance policy is possible, the interpretation favoring the insured will be adopted. Creole Explorations, Inc. v. Underwriters at Lloyd’s, 245 La. 927, 161 So.2d 768 (1964). In this case an interpretation in favor of the insured would afford Guidry the privilege of conversion.
*927 We therefore conclude that Guidry was entitled to convert his life insurance under the group policy to an individual policy within 31 days of April 29, 1968, the date that his insurance under the policy ceased because his employment with Economy Motors had terminated on the previous day.
Alternatively, National American contends Guidry did not timely exercise the conversion privilege in accordance with Section 16, supra. On May 21, 1968 Guid-ry notified the company in writing and tendered his premium payment as required by the policy. On May 29, 1968 the company mailed him an application form and requested additional money for the increased premium. Guidry tendered the completed form and additional payment by return mail. Although the form and additional payment were received by the company after the expiration of the 31 day period prescribed in the policy, we find under the circumstances of this case that there was sufficient compliance within the time specified.
Mrs. Guidry also claimed penalties and attorney’s fee, alleging that National American was arbitrary and capricious in refusing the conversion privilege. This claim must be denied. The insurer refused payment based on a reasonable interpretation of the policy, and this action was not so arbitrary or capricious as to constitute a denial of liability without probable cause so as to justify imposition of the statutory penalty.
For these reasons the judgment of the trial court is reversed, and it is now ordered that there be judgment in favor of Charmaigne A. Guidry and against National American Life Insurance Company in the sum of $20,000.00, with legal interest thereon from the date proof of death was received until paid, and all costs of these proceedings.
Reversed and rendered.

. The agent of record testified that an employee is eligible to apply for immediate coverage in this situation. In fact, Guid-ry did apply for coverage with Durham Motors upon commencing his employment there in late April, 1968.